## THE STATE OF CONNECTICUT vs. THE HARTFORD NATIONAL BANK.

Under the provisions of the act of Congress to provide a national currency, &c., it was competent for the absolute stockholders of an existing bank, in the absence of special state legislation to the contrary, to carry all the qualified stockholders, together with the entire capital, into a national organization, unless the latter dissented and withdrew.

By the act of 1864 a bank which accepted its provisions was bound to give thirty days' notice of its determination to adopt an organization under the national law prior to its actual organization, if it intended to exclude the qualified stockholders who did not assent in conformity with its provisions.

Where an existing bank was re-organized under the national law, and included all its stockholders, absolute and qualified, in its organization certificate, without giving thirty days' prior notice, or giving any notice except on the day of its re-organization, and transferred all its capital to the new organization,—it was held that the bank thereby assumed the assent of its qualified stockholders, and waived its right to exclude them if they did not assent within the time and in the manner prescribed.

BILL IN EQUITY, brought to the superior court in Hartford county, by the state as owner of non-transferable stock in the Hartford Bank, alleging that the bank had been re-organized under the law of Congress as a national bank, by the name of the Hartford National Bank, and that the directors denied the right of the state to an interest as a shareholder in the new organization, corresponding to that which it possessed in the old, and praying for a decree that the bank, under its new organization, issue to the state a certificate for an equal number of shares of the capital stock of the bank and admit it to all the rights and privileges of a stockholder, and that an account be rendered of all dividends declared since the new organization was made, and the share of the state be paid to it; or that the value of its interest be ascertained by an appraisal, and paid to the state.

The case in its main features is like the one next preceding, *State of Connecticut* v. *The Phœnix Bank*, ante, p. 205. The facts were found by the court, and so far as peculiar to the present case are as follows:—

The Hartford Bank was chartered by the General Assembly, and went into operation, in the year 1792. In the year 1803 the General Assembly passed an act, upon the application of the Hartford Bank and certain other banks, authorizing the treasurer of the state to subscribe for stock in the banks named, the act containing the following provisions :—— "And the state shall at all times have the right, on giving six months previous notice, to withdraw from the said banks the money or any part thereof which shall have been paid into said banks for shares, and thereby to discontinue the shares for which the money so withdrawn shall have been paid ; but the shares subscribed by the state shall not be transferable." A later section of the act provided that the state should be entitled to the appointment of a director in each of the banks in which its stock thus taken should exceed $5,000.

Under the provisions of this act the treasurer of the state from time to time between the 13th of June 1817, and the 1st of December 1846, subscribed and paid for 1655 shares of non-transferable stock, and the same was held by the state at the time the bank adopted its new organization as a national bank.

On the 4th day of May 1865 at a meeting of the stockholders of the bank legally called and held, it was resolved that the bank would reorganize itself as a national bank, if upon a vote taken a majority of two-thirds of the stockholders, required by the act of Congress for such a purpose, should vote in favor of it ; and that the vote be taken by the entry by each stockholder, or his attorney, of his name and vote in a book to be opened at the bank for that purpose, and to be kept open during banking hours until the stockholders should at an adjourned meeting order the vote to be declared. The meeting was then adjourned to the 13th day of June following, when the vote was declared, and it appeared that more than two-thirds of the stockholders had voted in favor of it, and the vote was declared by the meeting to be legally passed. Prior to the reorganization of the bank, Gabriel W. Coite, the treasurer of the state, was requested by the officers of the Hartford Bank to assent to the conversion of the bank

into a national banking association, and he as such treasurer, and in behalf of the state, did so assent, and recorded his vote upon the books of the bank in favor of such conversion, and afterwards informed the officers of the Hartford . Bank and of the Hartford National Bank orally of his election as treasurer of the state to hold the stock of the state in the Hartford Bank as regular transferable stock in the national banking association. The vote of the state in favor of the new organization was needed to make a majority of two-thirds of the entire stock of the bank, but not to make a majority of two-thirds of the transferable stock.

The stockholders, at their adjourned meeting, passed the following vote :—

"That the capital stock of the Hartford National Bank shall be the sum of $1,132,800, the same being the amount of the capital stock of the Hartford Bank, with the privilege of increasing the same from time to time, subject to the limitations of said act, to any sum not exceeding three millions of dollars; and that the directors of the Hartford Bank be and they are hereby empowered to make all transfers, contracts and agreements, and to do whatever acts are necessary to transfer the assets of every description and character of said Hartford Bank to the national banking association into which it is to be converted, so that said conversion may be absolute and complete."

The sum of $1,132,800, here stated as the capital of the bank under the new organization, included the 1655 shares held by the state under the old organization.

In pursuance of a vote of the stockholders, the directors under the new organization filed in the office of the comptroller of the currency, as required by the act of Congress, a certificate, the material parts of which are as follows :

"We, the undersigned, directors of the Hartford Bank, of Hartford, in the state of Connecticut, do hereby declare that the owners of two-thirds of the capital stock of said bank have authorized the directors of said bank to make the necessary organization certificate, and to change and convert the said bank into a national association, under the provisions of

State *v.* Hartford Bank.

the act of Congress, entitled "an act to provide a national currency secured by a pledge of United States bonds and to provide for the circulation and redemption thereof," approved June 3d, 1864, and by virtue of said authority, and in accordance with the provisions and requirements of the forty-fourth section of said act, we do hereby make and execute this organization certificate.

"1. The name and title of this association shall be 'The Hartford National Bank.'

＊　　＊　　＊　　＊　　＊　　＊　　＊

"3. The capital stock of this association shall be eleven hundred thirty-two thousand eight hundred dollars, and the same shall be divided into eleven thousand three hundred and twenty-eight shares of one hundred dollars each, as it is now divided in the said bank.

"4. The name and residence of each of the stockholders of the Hartford Bank, which is to become a national bank under the provisions of the act of Congress aforesaid, and the number of shares of $100 each, held by each stockholder, are as follows :—

[Among others] "State of Connecticut, - - 1655 shares."

At the meeting of the stockholders of June 13th 1865, the following resolution was also passed :—

" That this bank elects to accept the provisions of the law of this state, passed in 1864, in relation to state banks becoming national banking associations, and to keep and retain and not to surrender the charter of the Hartford Bank, and that the president be authorized to give the notice required by said act to the comptroller of public accounts of this state, and to holders of non-transferable stock." ＊

In pursuance of the authority given to the president and directors of the Hartford Bank, all the property of the bank of every kind was transferred and conveyed to the Hartford National Bank. After the bank had determined to become a

---

＊For the provisions of the act of 1864 which bear upon the case see note, *ante,* p. 216. The provisions of the act of Congress, and of sundry acts of the General Assembly of the state of Connecticut, relating to the subject of the conversion of state banks into national banks, will also there be found.

national banking association, and within ten days thereafter, on the 13th day of June, 1865, the bank gave written notice to the treasurer of the state of such determination. And thereupon the state by its treasurer, Gabriel W. Coite, elected, within thirty days after the receipt of the notice, to continue to hold the stock owned by the state in the Hartford Bank, as transferable stock in the national banking association ; of which election on the part of the state the bank had actual notice within thirty days, but by inadvertence the state treasurer omitted to give written notice of such election to the bank within thirty days from the time of the receipt of the notice of the intended change from the Hartford Bank.

After the bank had been reorganized as a national banking association, on the 9th of September, 1865, the treasurer of the state demanded of the association certificates for the same number of shares of the capital stock of the association that the state had held of the capital stock of the Hartford Bank, and that the new organization should count such stock as a part of its regular capital stock. But the Hartford National Bank refused and ever since has refused to issue certificates for the stock to the state, or allow the state any of the rights of a stockholder in the national bank. After this refusal of the bank, on the 16th of October, 1865, the state treasurer, in pursuance of an act of the legislature of the state passed June 19th, 1865, demanded of the national bank the share of the surplus of the Hartford Bank that was reserved by the latter while the bank held the funds of the state, to which the state was entitled as the holder of 1655 shares of stock, and on that day sent the following letter to Mr. Bolter, the cashier of the Hartford National Bank :—

"STATE OF CONNECTICUT, TREASURY OFFICE,
Hartford, October 16th, 1865.

"Mr. JAS. BOLTER, Cashier of Hartford National Bank, Sir :

"I hereby call your attention to 'an act supplementary to an act in addition to and in alteration of an act entitled an act concerning banks, approved July 11th, 1863,' which last

act was approved July 19th, 1865. Under the provisions of the second section of this act, I hereby request you to 'ascertain and determine' the value of the stock held by the State of Connecticut in the bank of which you were cashier (viz., the Hartford Bank,) on the day and date of the conversion of said bank to a national banking association, and notify me of the result as soon as practicable. Very respectfully yours,

GABRIEL W. COITE, *Treasurer.*"

The respondents refused and ever since have refused to cause the amount of the surplus and the value of the stock to be ascertained, or to pay the same or any part thereof to the state, but deny the right of the state to any part thereof.

Afterwards, on the 6th of July 1866, in pursuance of an act passed by the General Assembly, approved June 30th, 1866, the state, by Henry G. Taintor then its treasurer, delivered to the respondents the following notice :—

"To the Hartford Bank, and to the Hartford National Bank, of Hartford, Connecticut.

"Please take notice that, immediately upon the determination heretofore made by said Hartford Bank to become a national banking association, within thirty days after such determination, the State of Connecticut, by its treasurer, did elect and has ever since elected and desired, and still does elect and desire, to continue to hold its non-transferable stock in said Hartford bank as transferable stock in said Hartford National Bank, but through inadvertance or mistake said State by its treasurer failed to give notice of such election in the manner and within the time prescribed in section 337 of 'an act relating to communities and corporations.' Wherefore the State of Connecticut, by its treasurer, does now, and within twenty days after the passage of "an act in addition to an act relating to communities and corporations," give this notice in writing, of its election as aforesaid, to hold and continue to hold its non-transferable stock in said Hartford Bank, as transferable stock in said Hartford National Bank. Dated at Hartford this 6th day of July, 1866.

STATE OF CONNECTICUT,

by HENRY G. TAINTOR, *Treasurer.*"

After giving this notice the national bank was requested by the state to issue to it a certificate for 1665 shares of its stock, but refused to do so.

Before the 9th day of September, 1865, (but whether before or after the time within which the state was required to elect whether to become a stockholder in the national bank had expired, did not appear,) the treasurer proposed to sell the stock of the state in the bank, and applied to the cashier for that purpose. The cashier advised him to apply to a broker, but not to throw the whole of the stock upon the market at the same time. The cashier then made no claim that the state was not a stockholder, but subsequently, upon the advice of counsel, the officers of the bank came to the conclusion that the state was not legally a stockholder, and so informed the treasurer. The treasurer had in fact elected to make the state a stockholder, but no notice, oral or otherwise, was given to the bank, except such as may be inferred from the foregoing facts. He supposed that the act of voting upon the stock in question in favor of a national organization was sufficient notice to the bank of the election of the state to become a stockholder therein, and for that reason neglected to give the notice required by the statute.

Upon these facts the case was reserved by the superior court for the advice of this court.


*Welch* and *McFarland*, for the petitioner.


*C. Chapman* and *O. S. Seymour*, with whom was *J. C. Parsons*, for the respondent.


BUTLER, J. We have already holden, in the case of *The State* v. *The Phœnix Bank*, (ante, page 205, decided at the present term,) that under the provisions of the national banking law it was competent for the absolute stockholders of an existing bank in this state to carry all the shareholders, absolute or qualified, into a national organization, unless they dissented and withdrew, and unless prevented by controlling

State *v.* Hartford Bank.

state legislation. In this case the bank was not so controlled and did reorganize and carry its qualified stockholders into the new organization. Why then are they not, irrevocably, members thereof, and how can they be excluded ?

It is claimed on behalf of the respondent bank that before reorganization they accepted the provisions of the act of 1864 and are entitled to the benefits conferred, and therefore entitled to exclude the qualified stockholders unless they also complied technically with its provisions.

But we are of opinion that the bank is in no condition to make that claim.

When the act of 1864 came into operation the respondent bank was a state institution. How far that part of the act applicable to institutions already organized could have been made operative to exclude stockholders in an institution organized under a law of Congress, embracing its qualified stockholders, with rights apparently vested and absolute, we need not inquire. So far as the act was applicable to the respondent bank, it was entirely prospective. And it is very clear that the bank cannot be permitted to take the benefit of a technical provision in its favor, unless it has complied technically with its requirements.

The eighth section of that act provides a notice to the qualified stockholders of the determination of the absolute stockholders to reorganize the bank. It is framed upon the idea that such notice would be given, and an opportunity of thirty days allowed for an election by the stockholders *before* the determination should be carried into effect. It evidently was in the contemplation of the General Assembly that the assent or dissent of the qualified stockholders should be had before the organization certificate was made, that they might be omitted from or embraced in it as they should desire. But the bank gave no notice of its determination prior to its actual reorganization. The notice and the execution of the organization certificate bear the same date, and it is not found that the former preceded the later. The bank then have not pursued the provisions of that act in their letter or spirit. They embraced the state, and the other qualified stockholders

in the certificate, without any surrendry of their state charter, independently of the act of 1863, and relying principally upon the suspension which the act of 1864 conferred. Having thus assumed to include the state and the other qualified stockholders as equals in the new organization without pursuing technically and strictly the provisions of the act of 1864, they are in no condition to insist now upon their exclusion. They have made them stockholders, with equal rights and privileges under the law of Congress in the new institution, and we know of no power in this or any federal court that can exclude them against their consent. The law under which the bank exists, and the certificate of the comptroller, which conferred vitality upon it, fixed their rights in proportion to the number of their shares as perfectly as they fixed those of the president or of any other stockholder, and it does not lie in the mouth of either to say that they are not stockholders, or to insist upon their exclusion.

But if this were not so, we should not hesitate to hold the state entitled to all the rights of a stockholder upon other grounds.

The share of the state in the old bank was large, and it was natural and to be presumed that its officers would desire to know, and would take pains to learn, whether the treasurer of the state intended it should become a stockholder or not. They called upon him to assent to the change and to so vote upon the question whether a reorganization should take place or not; and it does not appear that they called upon any of the other qualified stockholders. One of the officers procured his power of attorney and voted accordingly. They thereupon included the state as a stockholder in their organization certificate. It is found that the treasurer had in fact elected, and it is not found that they did not know of that election. And the fact that they did know is clearly inferable from these facts and their subsequent conduct before they were advised by counsel that the state could be excluded.

We do not understand it to be claimed that if the fact clearly appeared and was found, that the officers of the bank knew of the election of the treasurer and acted upon that

knowledge when they included the state in the organization certificate, they could now be permitted to claim a forfeiture of the rights acquired by the state because of his failure to give technical notice of his election, nor could we assent to any such claim if made. If, as is found, he had in fact elected, and they knew it, and acted upon that knowledge, the giving of the subsequent notice and the failure of the treasurer to respond were of no consequence. The bank possessed the knowledge which that provision was intended to give them, and acted upon it, and can take no benefit from the omission.

But again, we are of opinion that the action of the bank in including these qualified stockholders in their organization certificate without previously ascertaining, in the mode pointed out in the statute, whether they assented or dissented, was substantially an assumption that they assented, and a waiver of the provision of the statute in relation to notice and dissent so far as made for their benefit. They evidently acted upon the idea that they could be included and be permitted to withdraw if they should subsequently dissent. It is not to be assumed that the bank would prefer that they should withdraw in order to retain their share of the surplus, or that the legislature intended that they should be deprived of their rights by a technicality. The purpose of the provision was the ascertainment of a fact for the benefit of both, fixing the rights of the parties in case of dissent, so that the remaining capital could be transferred and a just compensation made to those who withdrew. The bank *assumed* the fact, acted upon it, procured the right to be conferred under the national law, and cannot now insist upon a forfeiture because the information was not given them.

But if all this were not so, we should hold upon the facts found that the action of the bank in soliciting the assent of the treasurer, acting upon the knowledge that he intended to elect, and including the state in the organization certificate, and publishing that certificate as embracing the state, was calculated to mislead the treasurer, and induce him to believe that his assent would be assumed, unless he dissented, and to

neglect to make any response to the notice given by the bank; and under such circumstances we should not hold the state to a forfeiture.

We are of opinion therefore that the state is duly and regularly a stockholder of the Hartford National Bank, as claimed; that it is entitled to an account of dividends and the payment of such as have been declared upon their stock, and further entitled to a certificate for 1655 shares of capital stock of the bank, and all the powers and privileges of a stockholder to that extent; and the superior court is advised to decree accordingly.

In this opinion the other judges concurred.