[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for injunctive relief from the enforcement of a post employment covenant not to compete contained in the employment contract between the plaintiff and defendant dated August 14, 1989.
FINDINGS OF FACT
1. The defendant, the Ten Eighty Corporation, is the owner and operator of a radio station known as WTIC located in Hartford, Connecticut.
2. Pursuant to a series of employment contracts, from June 11, 1981 through August 14, 1992, the defendant employed the plaintiff, Arthur G. Gopen, and utilized his services as the on-air host of its morning radio show on WTIC-FM.
3. On August 3, 1992, the defendant notified the plaintiff that it would not renew the plaintiff's employment upon the expiration of his 1989 contract of employment on August 14, 1992.
4. Paragraph 11(b) of the 1989 employment contract contained a covenant not to compete that provided:
 "In consideration of renewal of ARTISTS'S employment by TEN EIGHTY and in consideration of the substantially higher compensation to which TEN EIGHTY has committed under this Agreement, and in recognition of the fact that ARTIST will have access to confidential trade information and techniques used by TEN EIGHTY, ARTIST agrees that in the event the Agreement is terminated prior to its expiration, or upon its expiration, for a period of twelve (12) months subsequent to such termination or expiration, ARTIST will not, without the express written consent of TEN EIGHTY, accept employment as an on-air personality with, or appear accept employment as an on-air personality with, or appear or broadcast on or on behalf of, any radio station, the main transmitter of which is situated within fifty (50) CT Page 58 miles of the Old State House in Hartford, Connecticut."
5. The 1986 contract contained a covenant not to compete that was identical to the 1989 covenant. (Plaintiff's Ex. B)
6. The plaintiff was represented by Attorney C. Michael Budlong for several weeks of the negotiations that led to the execution of the 1986 contract.
7. The plaintiff received a $35,018 raise and a $10,000 bonus upon signing the 1986 contract. (Defendant's Exhibit 39)
8. The plaintiff requested and received $44,980 in increased compensation over the course of the 1989 contact. (Defendant's Exhibit 39)
9. None of the increase was earmarked for the covenant.
10. The compensation was set and agreed to at the request of the plaintiff.
11. Between August 3, 1992 and the start of trial, the plaintiff had no firm offers of employment within or without the fifty-mile radius of the covenant.
12. Paragraph 14 of the 1989 contract, entitled "Unique Services, Relief," provides in pertinent part: "ARTIST agrees that the services to be furnished by ARTIST and the rights granted by ARTIST under this Agreement are of a personal, special, and unique character which gives them peculiar value. . . ."
13. As the on-air host of the defendant's morning show, the plaintiff did not provide services to the defendant that were unique, extraordinary and of exceptional value.
14. Over the course of the eleven years that the defendant employed the plaintiff, the defendant expended substantial. money, time and effort to enhance the plaintiff's image, visibility and popularity which also enhanced the defendant's image.
15. The defendant's promotional efforts directly benefited the plaintiff and the defendant. CT Page 59
16. It will take the defendant between 10 weeks and 12 weeks to replace the plaintiff.
17. WTIC-FM has listeners and potential listeners throughout the fifty mile radius.
18. WTIC-FM markets itself throughout the State of Connecticut and throughout Springfield and western Massachusetts.
19. WTIC-FM might potentially compete against every radio station whose transmitter is located within the fifty mile radius.
20. WTIC-FM has national, statewide and local advertising clients who purchase air time on the station to reach as many listeners as possible, wherever they reside.
21. The plaintiff at the time of his discharge was making $3,750 per week and since his discharge on 8-14-92 he has lost 21 weeks or $78,750.
22. Plaintiff has the skills to perform the duties of an off-air program director.
23. While he worked at WTIC-FM and after he left, the plaintiff has applied for the off-air position of program director, without success.
24. The radio broadcast industry is highly competitive and there is no shortage of on-air radio personalities, so plaintiff should not be difficult to replace.
It provided that for a period of 12 months subsequent to termination or expiration plaintiff will not accept employment as an on-air personality on any radio station whose transmitter is situated within fifty (50) miles of the Old State House in Hartford, Connecticut.
This court has no reservation that the defendant intends to enforce its restrictive covenant and has so stated in writing. There is no need on plaintiff's part to engage in any useless act.
This court heard seven (7) days of testimony and is satisfied that the subject covenant is not reasonably necessary CT Page 60 for the fair protection of the employer's rights and does unreasonably curtail the rights of the plaintiff, Samuel Stores Incorporated v. Aaron H. Abrams, 34 Conn. 248 (1919).
The court heard reliable testimony from the attorney representing the plaintiff in contract negotiations that a responsible officer of the defendant stated that the defendant would need ten (10) to twelve (12) weeks to replace the plaintiff.
More than four (4) months has passed since the plaintiff was terminated and he has been unable to find any employment that would satisfy the restrictive covenant. This court is satisfied that to enforce the covenant would be purely punitive.
To enforce the covenant would irreparably harm the plaintiff and to declare the covenant unfair and unreasonable will have little effect on the defendant.
The defendant was unable to show that the plaintiff had any trade secrets or confidential information as a result of his employment.
Dunn, J.